## TOWN OF WALPOLE v. THE STATE.

The offence of neglecting to make and put in good repair any new highway, described in the first clause of Rev. Stat., chap. 53, sec. 1, is a different offence from that of neglecting to keep any highway in good repair, described in the fifth clause of the same section; and proof upon an information founded on the fifth clause, that the highway was new and had not been made, shows a fatal variance between the offence charged and the one proved.

ERROR to reverse a judgment of the court of common pleas upon an information, alleging that " There was and ever since has been and still is a common highway in the town of Walpole in said county, used by all the good citizens of said State in and through the same to pass and repass with their horses, carriages, and teams, at their will and pleasure," and that the same " Was on the first day of January last past ever since has been and still is rocky, rutty, broken, uneven, ruinous and in great decay, in want of due reparation thereof, so that the good citizens of said State for and during the time aforesaid could not and still can not pass and repass in and through the said parts of said highway so in decay as aforesaid, as they used, were wont and ought to do, without great danger of their lives and loss of their goods."

" To this information the defendant pleaded the general issue, and at the trial of said issue at this term before the jury, the State's counsel admitted as a fact and offered evidence to show, that the highway in question was a new highway, which had not been made and put in good repair by the town; which evidence was objected to by the defendant as inadmissible to support the information, but was admitted by the court and given to the jury."

A verdict was rendered for the State and judgment entered; to reverse which this writ of error was brought and the following error was assigned :

Town of Walpole *v.* The State.

" That upon the trial of the issue in said case, the State's counsel admitted as a fact and offered evidence to show, that the highway in question was a new highway, which had not been made and put in good repair by the town ; which evidence was objected to by the defendant as inadmissible to support said information, but was admitted by the court and given to the jury."

*Vose,* for the plaintiff in error, cited Rev. Stat., chap. 53, sec. 1.

GILCHRIST, J. The Rev. Stat., chap. 53, sec. 1, describe five different cases of neglect for which towns may become liable to fines. The first is described thus : " If any town shall unreasonably neglect to make and put in good repair any new highway laid out therein." The second, " If any town shall unreasonably neglect to alter and put in good repair any highway which has been widened and straightened therein." The third, " If any town shall unreasonably neglect to grade the hills in any highway therein agreeably to the judgment of the court of common pleas." The fourth, " If any town shall neglect to cause any dangerous causeway or embankment in any highway therein to be securely railed." The fifth, " If any town shall neglect to keep any highway therein in good repair and suitable for the travel passing thereon."

It is quite plain that this statute, in as many different clauses, defines five distinct offences for which towns may be fined, and the court have only to inquire whether either and which of these is described in the indictment, and whether the evidence offered is competent to prove that offence.

No question is made, nor does there appear any just ground for question, that the information describes the fifth and last named of the offences. It alleges that " there was and still is the highway," " used by all the

good citizens to pass and repass with their horses, carriages, and teams," and that the same was " rocky, rutty, broken, uneven, ruinous and in great decay, so that citizens could not pass and repass as they used, were wont and ought to do."

It is wholly impossible by any construction of language, to hold that these words describe the offence named in the first clause, of unreasonably neglecting " to make and put in good repair any new highway " laid out in the town.    The existence of a highway " used by all the good citizens " is clearly alleged, and is as clearly referred to in representing the road as in a state of decay, so that persons could not " pass and repass as they used and were wont to do."

Now the evidence was clearly inapplicable to this charge in the information.    It showed indeed that the defendants could not be guilty of the offence, because it disproved the existence of a state of facts necessary for the commission of such an offence.    Or in other words, it established a fatal variance between the offence charged and the one proved.

We have arrived at this conclusion with reluctance, and because impelled to it by our views of the law and our duty consequent thereon.    The case is one of hardship to the petitioners and to the public.    That a wealthy town, after a full hearing and a judgment of the court that a road should be made, should compel the public prosecutor to array them as criminals before the bar of the court of common pleas, is sufficiently strange.    But that with no hope or power of reversing the decision of the court laying out the highway, and merely for the purpose of delay, they should so strenuously set themselves against the public interest as evidenced by the doings of an impartial committee, is still more surprising.    The moral sense of the community frowns upon an individual who interposes the law for the mere purposes of delay, and why should a

town be freed from that censure which is visited upon every citizen in such case ?

But the town of Walpole is not singular. Towns too often do this; and we make these suggestions, impelled by the experience we have had of the bad effects of such delays.

*Judgment reversed.*